### CINCINNATI INSURANCE COMPANY

v.

### TOROK et al., Third–Party Appellees;  Chubb Group/Federal Insurance Company et al., Third–Party Appellants.

[Cite as *Cincinnati Ins. Co. v. Torok,* 152 Ohio App.3d 398, 2003-Ohio-1764.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 01–JE–24.

Decided March 31, 2003.

Stern, Stern & Stern Co., L.P.A., and Gary M. Stern, for defendants/third-party plaintiffs-appellees.

Gallagher, Sharp, Fulton & Norman, D. John Travis, Gary L. Nicholson and Julie L. Juergens, for third-party defendants-appellants Federal Insurance Co. et al.

GENE DONOFRIO, Judge.

{¶ 1} Third-party defendants-appellants Chubb Group/Federal Insurance Company ("Federal") et al. appeal from a judgment of the Jefferson County Common Pleas Court denying their motion for summary judgment and granting a motion for summary judgment in favor of defendants/third-party plaintiffs-

appellees Gregory L. Torok, Cheryle L. Torok, and Jamison Torok.[1] The court held that two insurance policies issued by Federal to Gregory L. Torok's employer, a commercial general liability policy and business auto policy, provided underinsured motorist ("UIM") coverage to the Toroks by operation of law.

{¶ 2} Defendant/third-party plaintiff-appellee, Jamison Torok ("Jamison") is the minor son of defendants/third-party plaintiffs-appellees, Gregory L. and Cheryle L. Torok. On July 21, 1999, Jamison was a back-seat passenger in a motor vehicle driven by Nathan Finney ("Finney"). Finney lost control of the vehicle, and Jamison was severely injured. Finney's insurer paid the Toroks its policy limits of $25,000.

{¶ 3} Alleging that their damages exceeded $25,000, the Toroks presented claims for UIM coverage benefits against several insurers. The present litigation was initiated by Cincinnati Insurance Company on March 20, 2000, in Belmont County Common Pleas Court, when it filed a complaint for declaratory judgment seeking a determination that the Toroks were not entitled to UIM coverage benefits under a homeowner's policy issued by it. The case was transferred to Jefferson County Common Pleas Court on April 28, 2000, pursuant to a motion for change of venue.[2] On August 10, 2000, a journal entry was filed that stated, by agreement of the parties, that the Toroks had leave to amend their answer and counterclaim to file a third-party complaint against additional insurance companies. On August 14, 2000, the Toroks filed their amended answer, counterclaim, and third-party complaint against Federal.

{¶ 4} The Toroks alleged that they were insureds under two liability insurance policies, a commercial general liability policy and business auto policy, issued by Federal to Gregory L. Torok's employer, American Electric Power Service Corporation ("AEP")[3] pursuant to the Ohio Supreme Court's decision in *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. The Toroks argued that since they were not offered UIM coverage under either of the policies, such coverage arose by operation of law. Federal and the Toroks subsequently filed joint stipulations and cross-motions for summary judgment.

---

1. Gregory L. and Cheryle L. Torok, and their minor son, Jamison Torok, when referred to collectively will hereinafter be referred to as "the Toroks."

2. Cincinnati Insurance and the Toroks subsequently filed cross motions for summary judgment. The trial court granted the Toroks' motion and denied Cincinnati Insurance's. That decision was subsequently overturned by this court in *Cincinnati Ins. Co. v. Torok,* 7th Dist. No. 01–JE–15, 2003-Ohio-691, 2003 WL 346207, based on the Ohio Supreme Court's decision in *Hillyer v. State Farm Fire & Cas. Co.,* 97 Ohio St.3d 411, 2002-Ohio-6662, 780 N.E.2d 262.

3. Gregory L. Torok's employer is later identified as Ohio Power Company, a subsidiary of AEP and an additional named insured on both a commercial general liability policy and a business auto policy issued to AEP by Federal.

On August 9, 2001, the trial court filed a journal entry granting the Toroks' motion and denying Federal's. Specifically, the court found:

{¶ 5} "1. With respect to Federal's General Liability Policy, underinsured motorist coverage is imposed by operation of law, with limits equal to the liability limits ($250,000 per occurrence) of said policy. The Court further holds that only third-party plaintiff Gregory Torok, as an employee of the named insured, is an insured under this coverage.

{¶ 6} "2. With respect to Federal's Business Auto Policy, underinsured motorist coverage is imposed by operation of law, with limits equal to the liability limits ($250,000 per accident) of said policy. The Court further holds that third-party plaintiffs Gregory Torok, Cheryle Torok and Jamison Torok are each an insured under this coverage."

{¶ 7} This appeal followed.

{¶ 8} Federal's sole assignment of error states:

{¶ 9} "The trial court erred when it denied the appellant's motion for summary judgment granted the appellees' cross-motion for summary judgment."

{¶ 10} A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties. Civ.R. 57 and R.C. 2721.01 et seq. Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy. *Lessak v. Metro. Cas. Ins. Co. of N.Y.* (1958), 168 Ohio St. 153, 155, 5 O.O.2d 442, 151 N.E.2d 730. When a declaratory judgment action is disposed of by summary judgment our review of the trial court's resolution of legal issues is de novo. *King v. W. Res. Group* (1997), 125 Ohio App.3d 1, 5, 707 N.E.2d 947. Hence, summary judgment is proper when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129.

{¶ 11} R.C. 3938.18 governs the provision of uninsured and underinsured motorist ("UM/UIM") coverage. The statute has undergone numerous revisions in recent years. Prior to the most recent revision, R.C. 3937.18 required an insurer to offer UM/UIM coverage whenever an automobile liability or motor vehicle liability policy of insurance was issued. If UM/UIM coverage was not offered, it became part of the policy by operation of law. *Davidson v. Motorists Mut. Ins. Co.* (2001), 91 Ohio St.3d 262, 264, 744 N.E.2d 713. Since there have

been numerous changes in recent years to the statutes governing UM/UIM coverage and the case law interpreting those statutes, the applicable policy period and the applicable version of R.C. 3937.18 must first be determined.

{¶ 12} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732, syllabus. Here the BAP and CGL were issued on July 1, 1997, with a policy period from July 1, 1997, to July 1, 2000. Therefore, contrary to Federal's assertion, the version of R.C. 3937.18 enacted by Am.Sub. H.B. No. 261, which became effective September 3, 1997, does not apply to these policies.

{¶ 13} Federal argues that AEP was self-insured and, therefore, not subject to the requirements of R.C. 3937.18, citing *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310, and *Lafferty v. Reliance Ins. Co.* (S.D.Ohio 2000), 109 F.Supp.2d 837. As proof that AEP was self-insured, Federal points to a "Reimbursement Indemnification and Security Agreement" executed between itself and AEP. Under the agreement, AEP agreed to reimburse Federal any amounts paid under the policies.

{¶ 14} Concerning the self-insured defense, a good starting point on the issue is *Snyder v. Roadway Express, Inc.* (1982), 7 Ohio App.3d 218, 7 OBR 279, 455 N.E.2d 11. Snyder was an employee of Roadway Express when he was injured in an accident with an uninsured motorist. Roadway had a certificate of self-insurance with regard to motor vehicle liability insurance. Snyder filed suit against Roadway seeking UM coverage. The Ninth District Court of Appeals held that the UM/UIM requirements of R.C. 3937.18 were not intended to apply to self-insurers. Id. The court determined that the statute made no reference to self-insurers and applied only to insurance carriers authorized to write motor vehicle liability insurance policies. Id., 7 Ohio App.3d at 219, 7 OBR 279, 455 N.E.2d 11. The court reasoned that if that statute was applied to self-insurers, it would result in the "anomalous situation where one has the right to reject an offer of insurance to one's self." Id. The court added that it "[did] not believe the legislature intended such an absurd result." Id. See, also, *Estate of Ralston v. Metro. Prop. & Cas. Ins. Co.* (2001), 146 Ohio App.3d 630, 767 N.E.2d 789.

{¶ 15} The Ohio Supreme Court took up the issue four years later in *Grange Mut. Cas. Co. v. Refiners Transport & Terminal Corp.* (1986), 21 Ohio St.3d 47, 21 OBR 331, 487 N.E.2d 310. A truck driver employed by Refiners Transport and Terminal Corporation was fatally injured by an uninsured motorist. The accident occurred while the decedent was driving a truck, owned by Refiners, in

the course of his employment. Refiners met state financial responsibility requirements for its truck fleet in part by purchasing a financial responsibility bond and in part by purchasing excess insurance coverage, none of which contained UM coverage. The decedent's personal motor vehicle policy, issued by Grange Mutual Casualty Company, contained UM coverage. After Grange settled with the decedent's estate, it filed a declaratory judgment action against Refiners, alleging that Refiners was required to provide UM coverage on its truck fleet. Grange asserted that Refiners, as a self-insurer, was obligated under R.C. 3937.18 to provide UM coverage for the protection of its drivers. In opposition, Refiners contended that it was not a self-insurer, and, in any event, Ohio law did not require that uninsured motorist coverage be provided either under a financial responsibility bond or by a self-insurer.

{¶ 16} The court adopted the result reached in *Snyder*, supra, that R.C. 3937.18 did not apply to self-insurers. The court found that although Refiners' effort to meet its financial responsibility requirements by purchasing a financial surety bond and two excess insurance policies did not make it a self-insurer "in the legal sense contemplated by R.C. 4509.45(D) and 4509.72," such effort did make it a self-insurer "in the practical sense in that Refiners was ultimately responsible under the term of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." Id., 21 Ohio St.3d at 49, 21 OBR 331, 487 N.E.2d 310. However, the court noted that "whether [Refiners] is considered a bond principal, self-insurer, or both," Refiners was not subject to the requirements of R.C. 3937.18. Id., 21 Ohio St.3d at 50, 21 OBR 331, 487 N.E.2d 310. Ultimately, the court held that the "uninsured motorists provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." Id. at the syllabus.

{¶ 17} The United States District Court for the Southern District of Ohio also took up the issue in *Lafferty v. Reliance Ins. Co.* (S.D.Ohio 2000), 109 F.Supp.2d 837. Lafferty, an employee of Consolidated Rail Corporation ("Conrail"), was seriously injured while driving a truck owned by Conrail and in the course of his employment. After asserting claims against the driver who caused the accident, Lafferty filed an action against Conrail's insurer, Reliance Insurance Company, asserting that the Reliance policy should have included UIM coverage that should be available to Lafferty to cover the remainder of his claims. Conrail argued that the policy was not true insurance, but as a "fronting policy," was self-insurance not subject to R.C. 3937.18. The fronting policy had a matching liability limit and deductible amount and Conrail was obligated to promptly reimburse Reliance for the entire amount of any payments made under the policy. The court found that by virtue of the matching deductible policy it had obtained from Reliance, Conrail was, in effect, a self-insurer, and therefore the

policy was not subject to the provisions of former R.C. 3937.18, pursuant to *Grange Mut. Cas. Co.,* supra. The court also noted that two Ohio courts had applied the rationale of *Grange Mut. Cas. Co.* to matching deductible policies similar or identical to the one at issue, citing *McCollum v. Continental Ins. Co.* (Apr. 9, 1993), 6th Dist. No. L–92–141, 1993 WL 382455, and *DeWalt v. State Farm Ins. Cos.* (Sept. 11, 1997), Lake C.P. No. 96CV001173.

{¶ 18} Subsequently, two appellate districts have applied *Grange Mut. Cas. Co.* and *Lafferty* to similar policies. See *Straubhaar v. Cigna Prop. & Cas. Co.,* 8th Dist. No. 81115, 2002-Ohio-4791, 2002 WL 31040683, and *Rupple v. Moore,* 5th Dist. No. 02–COA–003, 2002-Ohio-4873, 2002 WL 31079768. See, also, *Fonseca v. Fetter* (June 15, 2001), Lucas C.P. No. CI99–4712. But, see, *Dalton v. Wilson,* 10th Dist. No. 01AP–1014, 2002-Ohio-4015, 2002 WL 1813508 (declining to follow *Lafferty* and distinguishing *Grange Mut. Cas. Co.*).

{¶ 19} In this case, the "Reimbursement Indemnification and Security Agreement" executed between Federal and AEP is quite similar to the matching deductible policies mentioned in the previous cases. Under the agreement, AEP agreed to reimburse Federal for all claims made under either of the policies. In addition, the agreement was secured by a letter of credit obtained by AEP. Since AEP entirely bore the risk of loss, it was a self-insurer "in the practical sense." *Refiners,* 21 Ohio St.3d at 49, 21 OBR 331, 487 N.E.2d 310. Therefore, the UM/UIM provisions of R.C. 3937.18 and the case law interpreting the statute are inapplicable.

{¶ 20} Accordingly, Federal's sole assignment of error has merit, the judgment of the trial court is hereby reversed, and judgment is hereby entered for defendants/appellants, Chubb Group/Federal Insurance Company.

Judgment accordingly.

VUKOVICH and WAITE, JJ., concur.